2016 MAR 14 AM 8: 48

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 72791-5-I |
| | ) | |
| M.M.M., b.d. 11/16/01, | ) | DIVISION ONE |
| | ) | |
| Minor Child. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | FILED: March 14, 2016 |

BECKER, J. — Unless a statute implicates First Amendment rights, the court will not entertain a claim that it is unconstitutionally vague on its face. Such a statute may be challenged only as applied to the facts of an individual case. In this appeal, the mother nevertheless mounts a facial vagueness challenge to RCW 13.34.190. This statute does not involve First Amendment rights but permits a court to terminate the parent-child relationship upon a finding that termination is in the best interests of the child. The mother advances no argument that the statute was vague as the court applied it to her under the particular facts of her case. We affirm.

## FACTS

The relevant facts are unchallenged on appeal. M.M.M. was born in 2001. Over the course of a 30-year relationship, M.M.M.'s father subjected his mother, M.M.M., and the couple's older children to severe emotional, physical, and sexual abuse. In 2003, there was a prior dependency proceeding involving

M.M.M. and his siblings. Although there were concerns about domestic violence in the home at that time, the initial dependency was dismissed in 2005.

In 2012, when M.M.M. was 10 years old, the Department of Social and Health Services took him into protective custody following an incident of physical abuse. The father was convicted of criminal charges based on the incident, and his parental rights were terminated. A court found M.M.M. to be dependent as to the mother, primarily based on her awareness of ongoing abuse and failure to protect M.M.M.

At the outset of the dependency, M.M.M. had contact with his mother. But after the mother brought her new boyfriend, without warning or preauthorization, to a visit to celebrate M.M.M.'s birthday in November 2012, the relationship was severely strained. M.M.M. eventually refused all contact with his mother. At several points during the dependency, the court determined it would be emotionally and psychologically detrimental to require M.M.M. to have contact with his mother.

During the two-year period of dependency, M.M.M. was placed in the care of his older sister. The siblings built upon the close bond they had as children, and M.M.M. made substantial progress in her care.

The Department filed a petition to terminate the mother's parental rights. The court held a hearing on the petition over several days in September 2014. By that time, M.M.M. had not had in person or telephone contact with his mother for more than a year. The trial court entered extensive factual findings following the hearing. The court found that despite the mother's participation in various

services, she had been unable to correct her parenting deficiencies. The court determined that the mother's inability to protect M.M.M., her denial of responsibility for her part in the abuse, and her lack of understanding and insight regarding M.M.M.'s circumstances and needs rendered her unable to safely and competently parent. The court found that it was not reasonable to believe that the mother would overcome these deficiencies in the foreseeable future. The court concluded that the Department had proved the six statutory termination factors set forth in RCW 13.34.180(1)(a)-(f) by clear, cogent, and convincing evidence and that termination was in the child's best interests. RCW 13.34.190.

The mother appeals.

## ANALYSIS

Parents have a fundamental liberty interest in the custody and care of their children. In re Dependency of K.D.S., 176 Wn.2d 644, 652, 294 P.3d 695 (2013). The legislature has prescribed a statutory scheme that balances this liberty interest with the child's right to a safe and healthy environment. K.D.S., 176 Wn.2d at 652. Pursuant to RCW 13.34.180 and RCW 13.34.190, the trial court must utilize a two-step process in determining whether to terminate parental rights. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). First, the court must determine whether the six factors set forth by RCW

13.34.180(1)(a)-(f) have been proved by clear, cogent, and convincing evidence.[1] These factors focus on the parental fitness and the risk of harm to the child. In re Welfare of C.B., 134 Wn. App. 336, 345, 139 P.3d 1119 (2006). Then, and only if all six of the factors are proved, the trial court must determine whether termination of the parent-child relationship is in "the best interests of the child." RCW 13.34.190(1)(b); A.B., 168 Wn.2d at 911. In order to terminate the relationship, the best interests of the child must be proved by a preponderance of the evidence. A.B., 168 Wn.2d at 911.

The court carefully followed this statutory scheme in this case and entered findings as to each of the statutory factors. The court also explicitly found "beyond a shadow of a doubt" that termination of the mother's parental rights was in M.M.M.'s best interests.

---

[1] The six termination factors are:
    (a) That the child has been found to be a dependent child;
    (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
    (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
    (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
    (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .
    . . .
    (f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.
RCW 13.34.180(1).

Nevertheless, the mother points out that the statute does not define "best interests of the child," nor does it set forth standards for the court to use in analyzing the child's best interests. Her sole argument on appeal is that absent specific guidelines, the statute allows for arbitrary enforcement and is unconstitutionally vague.

But the mother fails to address well-settled principles of law with regard to constitutional vagueness. Specifically, where First Amendment freedoms are not involved, we consider only whether the statute is constitutional as applied. In re Dependency of C.B., 79 Wn. App. 686, 689, 904 P.2d 1171 (1995), review denied, 128 Wn.2d 1023 (1996). Washington courts have determined that termination proceedings do not involve First Amendment rights. See In re Welfare of H.S., 94 Wn. App. 511, 524, 973 P.2d 474, review denied, 138 Wn.2d 1019 (1999), cert. denied, 529 U.S. 1108 (2000); C.B., 79 Wn. App. at 689. The mother makes no argument that the law was vague as it applied to her, in light of the record of the two-year dependency or the evidence presented to the court during the termination hearing. Accordingly, her constitutional challenge does not warrant review.

Even if we were to review the vagueness challenge on the merits, her claim would fail. We presume that statutes are constitutional. In re Dependency of K.R., 128 Wn.2d 129, 142, 904 P.2d 1132 (1995). The challenging party has the burden to prove otherwise beyond a reasonable doubt. C.B., 79 Wn. App. at 689. We consider the statute as a whole. H.S., 94 Wn. App. at 525. And a

provision is unconstitutional as applied only if the record shows the decision was arbitrary. H.S., 94 Wn. App. at 524.

The mother wholly fails to meet this burden. She focuses on the single subsection of the statute that includes the phrase "best interests of the child," and ignores the other factors the State was required to prove. RCW 13.34.190.

In the context of the statute as a whole, the phrase "best interests of the child" is not susceptible to arbitrary application. Our Supreme Court acknowledged in In re Welfare of Aschauer, 93 Wn.2d 689, 611 P.2d 1245 (1980), that the phrases "proper parental care" and "proper maintenance" in former dependency statutes could be "subject to value judgments, which may vary from person to person or from judge to judge." Aschauer, 93 Wn.2d at 697. But objective meaning could be derived from the context: "these expressions do not stand in isolation. If the statute is viewed as a whole, its meaning takes on substantial objectivity." Aschauer, 93 Wn.2d at 697. Likewise here, the "best interests of the child" has objective meaning when viewed in conjunction with the six statutory factors that the court must first find by clear, cogent, and convincing evidence. And as the court observed in Aschauer, the necessarily individualized factual determinations required in dependency proceedings make it impossible and, in fact undesirable, to articulate a rigid list of facts for determining a child's best interests:

> With developing knowledge and understanding of the needs of children, the criteria for determining what is "proper" or in their best interests also change. . . . Were the legislature to define the terms in question more precisely than it has already done, the result might well be an inflexibility that deterred rather than promoted the pursuit of the child's best interests.

6

Aschauer, 93 Wn.2d at 697-98 n.5.

Out of 122 factual findings, the mother assigns error to only the court's findings that termination of the parent-child relationship is in the child's best interests. However, numerous findings support the termination order. For instance, the court found there was evidence that the mother participated in the abuse of M.M.M., and on several occasions, she left the family home and effectively abandoned him. The court found that the mother's claim that she was unaware of the sustained, serious abuse inflicted upon M.M.M. and his siblings was not credible. The court also found that the mother displayed a "disturbing lack of insight" with regard to M.M.M.'s emotional and psychological needs and that her actions suggested that she placed a higher priority on her own desires and needs than those of her child. Finally, the court found that the mother was currently unfit to parent and that if M.M.M. were forced into a relationship with her, it would "likely undo all of the progress he has made." These unchallenged findings are verities on appeal. In re Mahaney, 146 Wn.2d 878, 895, 51 P.3d 776 (2002).

Affirmed.

Becker, J.

WE CONCUR:

Spearman, C.J.                          Schindler, J.

7